Boyd E. WALKER, Appellant,

v.

FIRST HOME SAVINGS
BANK, Respondent.

No. SD 29076.

Missouri Court of Appeals,
Southern District,
Division One.

Jan. 16, 2009.

John Alpers, Jr., Cabool, for Appellant.

Harold F. Glass, Millington, Glass &
Love, Springfield, for Respondent.

DANIEL E. SCOTT, Presiding Judge.

Three checks were forged on Appellant
Walker's account and paid by the drawee,
Respondent Bank. Walker sued Bank,
which claimed Walker's negligence sub-
stantially contributed to the forgeries.
The trial court found both parties at fault;
allocated 80% of the $11,050 loss to Walk-
er; and granted him a $2,210 judgment
from which he appeals.

## Facts and Background

Walker, who was 90 years old at trial,
had befriended and often supported Mat-
thew McIntosh and his mother Donna for
some 25 years, repeatedly giving both of
them money, and occasionally providing
them places to live. Walker also cared for
Matthew as a baby; washed his dirty laun-
dry after he was grown; bought him five
vehicles; and sent him money each month
when Matthew went to prison, apparently
three times, for "[w]riting checks, mostly."
When Matthew finally was released, Walk-
er picked him up and brought him back to
Walker's house, where Matthew stayed for

a time and to which he sometimes returned.

Such kindness was repaid, several months before Matthew's forgeries, by Donna McIntosh passing an $8,000 forged check on Walker's account[1] and giving Matthew most of the money. At Donna's sentencing, Walker heard her tell the court that Matthew actually forged the check.[2]

During a five-day period several months later, Matthew forged and brought to Bank the three subject checks. Per Bank's operations manual, a teller on each occasion (1) checked for proper endorsement; (2) verified the payee's identifications; (3) verified sufficient funds; and (4) checked for stop payments or alerts on the account. Each check passed these tests and was paid without checking the drawer's signature, even though Walker's signature card had been scanned into Bank's computer system for ready access and easy review. At trial, a Bank witness declared the checks "obvious" forgeries, but testified that checking signature cards was not part of Bank's operations manual.

### Legal Principles

We must affirm the judgment unless it is unsupported by or against the weight of substantial evidence, or it erroneously declares or applies the law. We view all evidence and inferences in favor thereof; disregard contrary evidence and inferences; and recognize the trial judge's su-

perior opportunity to assess witness credibility. *See Johannsen v. McClain*, 235 S.W.3d 86, 87 (Mo.App.2007).

One whose blank checks are stolen and forged usually is not liable thereon. *See* § 400.3–401.[3] But if one's own negligence contributes to the forgery, and a payor bank also is negligent, § 400.3–406 may trigger a comparative fault analysis:

(a) A person whose failure to exercise ordinary care substantially contributes ... to the making of a forged signature on an instrument is precluded from asserting ... the forgery against a person who, in good faith, pays the instrument or takes it for value or for collection.

(b) Under subsection (a), if the person asserting the preclusion fails to exercise ordinary care in paying or taking the instrument and that failure substantially contributes to loss, the loss is allocated between the person precluded and the person asserting the preclusion according to the extent to which the failure of each to exercise ordinary care contributed to the loss.

Since the quoted statute is central to Walker's appeal points, but Missouri case law thereon is scant,[4] our analysis draws freely from Professors White & Summers' well-known UCC commentary.[5]

### Point I

■ Walker denies his negligence substantially contributed to the forgeries, citing his own testimony that he had no

1. "Just like this one," testified Walker at the instant trial.

2. Walker readily admitted at the instant trial, "That [sic] what she said. And I don't doubt it, because the signature is the same."

3. Statutory citations are to the Missouri Uniform Commercial Code, RSMo chapter 400, as amended through 2006.

4. *Dalton & Marberry, P.C. v. Nationsbank, N.A.*, 982 S.W.2d 231 (Mo. banc 1998) mentioned § 400.3–406's comparative fault approach in dicta, expressly noting that the statute did not apply to "the type of scam involved here." *Id.* at 237.

5. 2 JAMES J. WHITE & ROBERT S. SUMMERS, UNIFORM COMMERCIAL CODE § 19–3 (5th ed. & Supp. 2008)(hereinafter "White & Summers").

recent contact or dealings with Donna, and that he safeguarded his checkbook on his person or in a lockbox. But the trial court was not required to credit such testimony, and apparently did not do so, at least regarding Walker's "safeguards," and especially given the prior $8,000 forgery. Walker's lockbox was a gift from Donna, and his testimony suggested that he had only one of three keys thereto. Ordinary care arguably required Walker, following a check theft and $8,000 forgery despite apparent safeguards, and with scienter of Matthew's criminal proclivity and presence about his home, to be sure more checks were not missing, or contact Bank about alerts or stop payment orders, or question his lockbox security and perceived safeguards; but we find no such evidence. Viewing the record as we must *(Johannsen, supra)*, we cannot say the trial court erred in finding that Walker's failure to exercise ordinary care substantially contributed to the forgeries.[6] Point I fails.

### Point II

 We question Point II, which claims the trial court erred in finding that Bank "followed reasonable commercial standards in accepting checks ... in that Bank was negligent in not recognizing that checks were obvious forgeries by failing to verify signatures and failed to exhibit good faith." The premise is faulty: the judgment described Bank's fault and allocated the loss 80–20 because Bank had *not* followed reasonable commercial standards.[7] Nor are reasonable commercial standards relevant to Bank's good faith under Missouri's Uniform Commercial Code.[8] Walker cites a 1984 Oregon case declaring a bank's failure to review check signatures negligence as a matter of law; a view effectively disapproved by later Article 3 revisions which Missouri enacted in 1992. *See* § 400.3–103(a)(7); White & Summers § 19–3. Walker seeks reallocation of the loss, but this court cannot reweigh the evidence or substitute its fact findings for those of the trial court. We deny Point II and affirm the judgment.

BARNEY and BATES, JJ., concur.

---

6. "Substantially contributes" is a lesser standard than "direct and proximate cause." *See* Comment 2 to § 400.3–406.

   [I]n order to preclude one from asserting a forgery or alteration, that person need not prove that the person's behavior was a "direct and proximate cause" of the forgery or alteration, but only that it "substantially contributed" thereto. Thus, where there are multiple causes of loss (not the least of which may be a deficiency in the thief's morality), one person's act could be a substantial cause even though other events might be more direct and powerful causes. White & Summers § 19–3. "The acts sufficient to 'substantially contribute' to a material alteration or to the making of an unauthorized signature are limited only by man's capacity for slovenly business transactions."

*Id. See also* Annot., *Commercial paper: what amounts to "negligence contributing to alteration or unauthorized signature" under UCC § 3–406,* 67 A.L.R.3d 144 (1975).

7. Section 400.3–406(b) triggered comparative fault only if Bank "fail[ed] to exercise ordinary care in paying or taking the instrument," and for Bank, exercising ordinary care required "observance of reasonable commercial standards." § 400.3–103(a)(7).

8. UCC 3–103(a)(4)'s "good faith" definition was revised in 1990 to add an objective requirement to observe reasonable commercial standards of fair dealing. Missouri has not adopted that change. 13 WILLIAM H. HENNING, MISSOURI PRACTICE: UCC FORMS § 1–102, Form 1 Comment (3d ed. & Supp. 2008).